## Carlson Estate

*Enoch C. Filer*, for accountant.

WAITE, P. J., July 11, 1951.—Leonard O. Carlson, also known as L. O. Carlson, died November 10, 1947, leaving a last will and testament dated January 17, 1939. His only surviving next of kin are his widow, Esther M. Carlson; a brother, N. A. Carlson, and his mother, Helena Vandewark. He had no children.

The will was duly probated and letters testamentary issued to N. A. Carlson, who was named as executor in the will.

The first and partial account of the executor showing a balance of $140,184.73 was filed on April 13, 1951, and is now before the court for audit. The other questions now requiring determination set forth in paragraphs (o) and (s) of the audit statement filed on May 7, 1951, are as follows:

"(o) Are the Specific legatees under paragraphs 2, 3, and 4, of the Testator's Last Will and Testament, who are entitled to receive specific bequests of the Erie Meter Systems Inc. common capital stock, also entitled

to receive any portion of a stock dividend received by the Testator subsequent to the date of the will and before his death, in the absence of any indication in the will, or in the circumstances of the case, that it was within the general intention of the testator that such subsequent legatee should do so?

"(s) Legacies under paragraph Third of 2 shares of Erie Meter Systems Inc. stock each to Harry S. Pell, who predeceased the Testator, and Louis R. Olsen and Raymond A. Newcomb who were not employees at the time of decedent's death, have lapsed."

The particular clauses of the will referred to in paragraph (o) of the audit statement, supra, are as follows:

Paragraph 2, of testator's last will and testament provides, in part, viz:

". . . therefore I give and bequeath *three* shares of *my stock* in Erie Meter Systems Inc. to Lionel F. Smith an employee of the Corporation." (Italics supplied.)

Paragraph 3 provides, viz.:

"I give and bequeath *two* shares of *my stock* in Erie Meter Systems, Inc. to each of the following employees of this corporation; Louis R. Olsen, Harry S. Pell, and Raymond A. Newcomb of Tulsa, Okla." (Italics supplied.)

Paragraph 4 provides, in part, viz.:

"I give and bequeath *one* share of *my stock* in Erie Meter Systems, Inc. to each of the following employees of this corporation: John P. Weber, Harry W. Bole, Clyde A. Hagle, Claude M. Raley, Conrad C. Sandberg, Harold Ripley, John E. Robison, William B. Johnson, Jr., and Vance B. Brooks." (Italics supplied.)

The essential question here involved is whether the references to "share" or "shares" of "my stock" is to be construed as of the date of the will, January 17, 1939, or as of the date of testator's death, which was November 10, 1947.

In Ballentine's Law Dictionary a will is defined as:

"Any instrument, executed with the formalities required by law, whereby one makes a distribution of his property to take effect after his death."

In Wills in Pennsylvania, by Hutton (citing Jarman on Wills) it is said (pages 452-453):

"A will speaks, for some purposes, from the period of execution, and for others from the date of the death of the testator; but never operates until the latter period."

In the absence of a contrary intention expressed in the instrument itself a will ordinarily speaks as of the time of testator's death.

In Page on Wills, Vol. 2, sec. 919, at pages 810-811, it is said:

"In construing a will, it will be presumed that the testator understood and intended the provisions thereof. As the courts are careful to discover and enforce testator's intention, but not to make a new will for testator, it follows that they constantly refuse to ascertain testator's intention except from the words which he used in his will, together with such extrinsic evidence as is admissible. The question always before the mind of the court is, not what should testator have meant to do or what words did he mean to use, but what is the reasonable meaning of the words which he has actually used."

In The Law of Wills in Pennsylvania, by Williams, sec. 448, page 179, it is said:

"All mere technical rules of construction must give way to the plainly expressed intention of a testator if that intention is lawful. It is a rule of common sense, as well as law, not to attempt to construe that which needs no construction. This rule may possibly be applied to an item of a will separately."

In the instant case testator's wife, primarily, and next his mother and his brother, being his only sur-

viving next of kin, are the natural objects of his bounty.

It is true that the number of shares owned by testator in the Erie Meter Systems, Inc., was greatly increased by stock dividends between the time of the execution of testator's will and the time of his death. This increase in the number of shares was made by stock dividends and not by a split up of the shares. Mr. Carlson, of course, knew of this increase in the number of shares and of the terms of his will. He had ample time to change his will and the number of shares bequeathed to any legatee had he so desired. See In re Brann, 219 N. Y. 263, 114 N. E. 404. See also Hicks v. Kerr et al., 132 Md. 693, 104 Atl. 426, and McGregory v. Gaskill et al., 296 S. W. 844. Knowing these facts he still made no such change.

After carefully reviewing the will and the entire record we are clearly of opinion that words "my stock" in the several bequests referred to in the several clauses of the will should be construed to speak as of the time of decedent's death. The stock dividends were payable to the holders of the stock at the time the dividends were declared. Unquestionably the words "my stock" in the clauses of the will above quoted are specific bequests. See Pennsylvania Orphans' Court Commonplace Book by Hunter, vol. 2, sec. 20 (a), (b) and (c).

Under the eleventh clause of the will the residue and remainder of testator's estate is given for the creation of a fund for the benefit of any needy children of the employes of the Erie Meter Systems, Inc. This, we must agree, is a very worthy purpose, and from the words of the will it was very near to the heart of testator. No interpretation should, in our opinion, be put upon any other clauses of the will that would in any way defeat this clearly expressed purpose. See opinion by Judge Waite in First National Bank of

Boston v. Union Hospital of Fall River, 281 Mass. 64, 183 N. E. 247 (1932).

For the reasons herein stated an order of distribution is directed to be made in accordance herewith.